## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## NORTHERN DIVISION

| | |
|---|---|
| Dr. Thomas Orr, | COURT FILE NO. __19-1023__ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Northern State University; South Dakota Board of Regents; NSU President, Dr. Timothy Downs (in his official capacity); and Former NSU Dean of Education, Dr. Kelly Duncan (in her official and individual capacities), | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

Plaintiff brings this civil-rights action against Defendants and states his claims as follows:

### PARTIES

1. Plaintiff Dr. Thomas Orr is an individual person and a resident of Aberdeen, South Dakota. He served as an Assistant Professor in the NSU School of Education between 2011 and 2019.

2. Defendant Northern State University (NSU) is a public university located in Aberdeen, South Dakota.

3. Defendant South Dakota Board of Regents is the governing board that manages and controls public universities in South Dakota. It is located in Pierre, South

Dakota. At all relevant times, the Board of Regents and its members were acting under color of state law and had the authority to grant Dr. Orr's application for tenure.

4. Defendant Dr. Timothy M. Downs is NSU President. At all relevant times, Dr. Downs, as NSU President, was acting under color of state law and had the authority to grant Dr. Orr's application for tenure.

5. Defendant Dr. Kelly Duncan was Dean of Education at NSU between 2015 and 2018. During that time, she resided in South Dakota, had supervisory authority over Dr. Orr, and served on Dr. Orr's promotion-and-tenure committee. At all relevant times, Dean Duncan was acting under color of state law. On information and belief, Dr. Duncan now resides in Las Vegas, Nevada.

6. At all relevant times, Dr. Orr was an employee of NSU.

## JURISDICTION & VENUE

7. This Court has original jurisdiction over the claims Plaintiff alleges in this Complaint because they arise under federal law. 28 U.S.C. § 1331.

8. Defendant NSU is a public university located in South Dakota. In her role as NSU's Dean of Education, Defendant Duncan took adverse actions against Plaintiff in South Dakota that gave rise to his claims. Accordingly, this Court has personal jurisdiction over both Defendants.

9. Venue is proper in this Court because a substantial part of the events giving rise to Plaintiff's claims occurred in Aberdeen, South Dakota. 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

*Dr. Orr's Background*

10. Dr. Thomas Orr joined Northern State University (NSU) in 2011 as a tenure-track assistant professor after obtaining an M.S. in Parks and Recreation and later a Ph.D. in Leisure Behavior from Indiana University, Bloomington.

11. Dr. Orr grew up in the 1980s on a family farm near Jamestown, North Dakota. The Orr farm and home are just a 90-mile drive up Highway 281 from Aberdeen. While at NSU, he regularly visited his family and helped on the farm.

12. Sports and hockey have always been a big part of Dr. Orr's life—as a fan, player, coach, professor, husband, and now parent. He is married to Matty (Brekken) Orr.

13. Like her husband, Matty Orr grew up in North Dakota, and hockey has always been a big part of her life. She starred in college at both the University of

3

Minnesota and later at the University of North Dakota. And like her husband, Ms. Orr taught classes at NSU.

14. Every winter the Orrs build a hockey rink—complete with boards and glass—in the backyard of the home they own just blocks from the NSU campus.

15. In or around 2016, the Orr's hockey rink and contributions to their community were the subject of a short-film called *Sandlot Hockey*.

### *NSU customarily applies a teaching-plus standard for granting tenure.*

16. Throughout Dr. Orr's employment at NSU, faculty were evaluated annually in three areas: teaching, service, and research. Expectations for these areas of evaluation—what counts as excellence in teaching, service, and research—are set forth in NSU's Standards Document.

17. Still, at NSU, teaching is king. The quality of an assistant professor's teaching is the most important of three factors when evaluating a tenure application.

18. As stated in the Standards Document, teaching is the "Heart of NSU's mission" and "defines the core of its identity." To get tenure at NSU, an assistant professor must excel in teaching.

19. If an assistant professor excels in teaching, then NSU customarily grants him tenure as long as he excels in service or research, and at least meets expectations in the other. This teaching-plus standard is well-known among NSU faculty and administrators.

***Dr. Orr met (if not exceeded) NSU's teaching-plus standard for granting tenure.***

20. **Teaching.** As a scholar, Dr. Orr has taught more than 100 classes and approximately 2,900 students across a wide array of topics. At NSU, for example, Dr. Orr's classes have included:

 a. Introduction to Sports Marketing and Administration;

 b. Philosophies, Concepts, and Contemporary Issues in Coaching;

 c. Law and Ethics;

 d. Financial Aspects of Sport;

 e. Wellness for Life;

 f. Introduction to Research Methods; and

 g. Organization and Administration of Health, Physical Education, Recreation (HPER) and Athletics.

21. Dr. Orr excelled in teaching at NSU. Reviews of his teaching were consistently high.

22. Students described Dr. Orr in reviews as "the best teacher they have ever had," a "phenomenal teacher," and "amazing."

23. In performance reviews, Dr. Orr's superiors always rated his teaching as "exceeding" or "substantially exceeding" expectations.

24. And in October 2018, the Society for Health and Physical Educators of South Dakota recognized Dr. Orr's "professional excellence" and "dedication and proficiency in teaching" by giving him the award for South Dakota College/University Teacher of the Year.

25. **Service.** Dr. Orr also excelled in service at NSU. His record of service at NSU is extensive and exemplary.

26. Just a few years into his time at NSU, Dr. Orr took on the role of Coordinator (or de facto Chair) of his department.

27. Since then, enrollment and majors in HPE and related disciplines have gone up, even though NSU was losing students more generally.

28. Dr. Orr also volunteered to serve in numerous roles at NSU, including:

    a. Founder and Co-Director, Pack Gives Back;

    b. Chair and Board Member, NSU Common Read Committee;

    c. Board Member, HPE Discipline Council, SD Board of Regents;

    d. Member, NSU Graduate Council;

    e. Member, NSU Instructional Services Committee;

    f. Member, NSU Faculty Travel & Sabbatical Committee; and

    g. Member, NSU Athletics Committee.

29. Perhaps most notable, just a few years into his time at NSU, Dr. Orr was elected to NSU's Faculty Senate.

30. As Professor Art Marmorstein wrote in a letter to President Downs supporting Dr. Orr's application for tenure: Dr. Orr's election to Faculty Senate so soon after joining NSU was "unusual" and a "tribute to the regard his colleagues have for him."

31. Like the performance reviews of his teaching, Dr. Orr's superiors always rated his service to NSU as "exceeding expectations" or "substantially exceeding expectations."

32. **Research.** Dr. Orr's record of publications and presentations compare favorably to faculty at NSU who have received tenure and to others in his field. Examples of publications and presentations on Dr. Orr's *curriculum vitae* include:

   a. Jamieson, L., & Orr, T. 2009. *Sport and Violence: A Critical Examination of Sport*. London: Elsevier.

   b. Jamieson, L., & Orr, T. 2012. *Sport and Violence: A Critical Examination of Sport*, E-Book. London: Elsevier.

   c. Steinfeldt, J.A., Rutkowski, L.A., Orr, T. et. al. 2012. "Masculine Norms and Moral Atmosphere in College Football." *The Sport Psychologist*, 26, 3, 341–358 (2012).

   d. Orr, T. 2014, 2017, and 2018. "This I Believe." *NSU Faculty Forum*. Aberdeen, SD.

   e. Orr, T. & Kehm, S. 2015. *Deliberate Play, Deliberate Practice*." U.S. *Youth Soccer Annual Conference*. Philadelphia, PA.

   f. Orr, T. October 2015. "Concussions: The Marketing Nightmare that Faces NFL and Youth Sports." *Journal of Business and Economics*, 6, 10.

   g. Orr, T. 2016. "Legal Liability and Risk Management in Physical Education and Sport." *Society for Health and Physical Educators Conference*. Deadwood, SD.

   h. Orr, T. 2016. "The Wide World of Sports: China and U.S. Relations in Sport." *International Business Conference*. Jinan, China.

      i. Orr, T. 2018. "Bullying and Hazing in Physical Education and Sport." *Society for Health and Physical Educators Conference*. Sioux Falls, SD.

33. Faculty familiar with Dr. Orr's research—both at NSU and outside the University—recommended that he be granted tenure.

34. In performance reviews, Dr. Orr's superiors twice rated his research as "meeting expectations." In every other year, they rated his research as "exceeding expectations."

35. In short, then, Dr. Orr met or exceeded NSU's customary standard for granting tenure. He excelled in teaching. He excelled in service. And he excelled (or at least met expectations) in research.

***Despite meeting its teaching-plus standard for tenure, NSU denied Dr. Orr tenure and terminated his employment. The University did so because of Dr. Orr's clear commitments to the law and his family.***

36. Throughout his employment at NSU, Dr. Orr exercised his First Amendment right to speak on matters of public concern. This put him at odds with those who ultimately had power over his application for tenure—in particular, Kelly Duncan, NSU's former Dean of Education.

37. For example, near the end of 2015, Dean Duncan gave her tenure binder to Dr. Orr in order to help him build his own. But when the GEAR UP scandal broke,[1] Dean

---

[1] GEAR UP was a discretionary grant program designed to increase access to post-secondary education among low-income and historically under-represented populations (including, e.g., Native Americans in South Dakota). The scandal involved questions about whether Dean Duncan, among others, exploited the program for personal profit.

Duncan went into Dr. Orr's locked office, without giving him notice or asking his permission, in order to retrieve her binder.

38. Dr. Orr reported the incident to the University. In doing so, he made clear that he would not lie to law enforcement if they came to campus asking questions about Dean Duncan and GEAR UP.

39. Dr. Orr's speech on matters of public concern did not end here. For example, they also included:

   a. Opposing race discrimination and harassment against a Korean faculty member at NSU by Dean Duncan (among others);

   b. Opposing Dean Duncan's role in covering up incidents on campus (e.g., the bullying of a graduate student) and reporting false data to NSU's accrediting organization (HLC);

   c. Opposing Dean Duncan's role in changing student grades, inflating the grades of student-athletes, and giving athletes greater latitude in course-selection than non-athletes;

   d. Opposing Dean Duncan's apparent retaliation against an instructor who claimed that Dr. Duncan pressured her to change a student's grade; and

   e. Opposing Dean Duncan's abuse of power and misuse of resources with respect to NSU's Department of Health and Physical Education (HPE).

40. Dean Duncan, among others, repeatedly reacted to Dr. Orr's protected speech with anger. She would also take adverse action against him, his wife (Matty), or his department.

41. For example, Dean Duncan demoted Dr. Orr from Department Chair or Coordinator, manipulated teaching loads for HPE faculty, denied resources to HPE that were provided to other departments, and took classes away from HPE faculty (including Matty Orr).

42. Further, former NSU Counsel, John Meyer, warned Dr. Orr that professors who "do not shut up" lose their jobs. In the months leading up to his application for tenure, Dr. Orr also learned that a confidante of Dean Duncan had said he should "watch his back."

43. Dean Duncan did not hide her feelings about Dr. Orr.

44. She often ignored Dr. Orr on campus or looked at him with disgust when he spoke.

45. Contrary to the customs of her office, Dean Duncan did not send Dr. Orr a card when his grandmother died or when his mother-in-law became ill; she did not congratulate Dr. Orr on the birth of a child; and she even declined to be Dr. Orr's friend on social media.

46. In conversations with Dr. Orr, Dean Duncan made disparaging remarks about his marriage with Matty and the active role he played in their family.

47. Further, during Dr. Orr's application for tenure, Matty Orr was pregnant. When Dr. Orr requested to take FMLA leave for the birth of his child, Dean Duncan said no.

48. She explained that he was not "going to have a baby" and that there was nothing "physically wrong" with him. She further explained that male faculty at NSU did not take FMLA leave for the birth of children.

49. Only after Dr. Orr went to NSU Human Resources asking for help did he get *some* leave granted. But even then, Dean Duncan refused to give Dr. Orr more than a fraction of the time he was entitled to under the FMLA.

50. Giving a male professor like Dr. Orr additional paternity leave, she said, made her "uncomfortable."

51. During Dr. Orr's abbreviated paternity leave, Dean Duncan demanded that he spend time assisting substitute teachers and blamed him for classes that had allegedly gone poorly.

52. Dean Duncan temporarily took over one of Dr. Orr's classes. According to students, Dean Duncan spent at least one class session digging for dirt on Dr. Orr instead of teaching.

53. Shortly after returning from paternity leave, Dr. Orr found out via email during one of his classes that NSU was denying his application for tenure. Later that spring, NSU took away a campus office, classes, and income from Matty Orr.

54. Dean Duncan was on Dr. Orr's promotion-and-tenure committee.

55. On information and belief, Dean Duncan voted against granting Dr. Orr tenure, used her power to convince others on the committee to do the same, and lobbied NSU President Timothy M. Downs to affirm the decision.

56. On information and belief, despite Dr. Duncan's efforts, some members of the promotion-and-tenure committee voted to grant Dr. Orr's application for tenure. But if an applicant receives fewer than a majority of the votes, the committee's recommendation is deemed to be against tenure.

57. President Downs approved Dean Duncan and the promotion-and-tenure committee's recommendation to deny Dr. Orr's application for tenure, and the South Dakota Board of Regents did the same.

58. On information and belief, the President of NSU always (or nearly always) approves tenure recommendations of the promotion-and-tenure committee.

59. On information and belief, the Board of Regents always (or nearly always) approves the tenure recommendations of university presidents

60. When presented with compelling evidence of Dr. Orr's credentials for tenure during the grievance process, President Downs suggested that Dr. Orr was, in fact, denied tenure because he had "conflicts" with a member(s) of University administration that made him a "bad fit" for NSU.

61. As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer loss of income and benefits, out-of-pocket expenses, emotional distress, mental anguish, humiliation, embarrassment, harm to reputation, loss of earning capacity, and other harm worth damages in an amount exceeding $75,000.

## CAUSES OF ACTION

### COUNT I
### Retaliation in Violation of the FMLA
*Against Defendant NSU*

62. Plaintiff incorporates the foregoing paragraphs by reference.

63. At all relevant times, Plaintiff was an eligible employee of Defendant NSU under the FMLA.

64. At all relevant times, Defendant NSU was a covered employer under the FMLA.

65. Section 2615 of the FMLA forbids employers from retaliating against employees for exercising their rights under the FMLA.

66. As described herein, Plaintiff engaged in protected activity under the FMLA.

67. As described herein, Defendant NSU unlawfully retaliated against Plaintiff in violation of the FMLA.

68. As described herein, Defendant NSU's unlawful conduct was willful.

69. As a result of Defendants' violation of Plaintiff's rights under the FMLA, he is entitled to some or all of the relief requested below in his Request for Relief.

### COUNT II
### Interference in Violation of the FMLA
*Against Defendant NSU*

70. Plaintiff incorporates the foregoing paragraphs by reference.

71. At all relevant times, Plaintiff was an eligible employee of Defendant NSU under the FMLA.

72. At all relevant times, Defendant NSU was a covered employer under the FMLA.

73. Section 2615 of the FMLA forbids employers from interfering with employees exercising their rights under the FMLA.

74. As described herein, Plaintiff engaged in protected activity under the FMLA.

75. As described herein, Defendant unlawfully interfered with Plaintiff's FMLA rights in violation of the FMLA.

76. As described herein, Defendant NSU's unlawful conduct was willful.

77. As a result of Defendants' violation of Plaintiff's rights under the FMLA, he is entitled to some or all of the relief requested below in his Request for Relief.

### COUNT III
### Sex Discrimination in Violation of Title IX
*Against Defendant NSU*

78. Plaintiff incorporates the foregoing paragraphs by reference.

79. Title IX prohibits public universities that receive federal funds from discriminating against persons, including their faculty, on the basis of sex (including sex stereotypes). 20 U.S.C. § 1681 et. seq.

80. At all relevant times, Defendant NSU was a public university in receipt of federal funds and covered under Title IX.

81. As described herein, Defendant NSU unlawfully discriminated against Plaintiff on the basis of sex (including sex stereotypes).

82. As described herein, Defendant NSU acted with malice or reckless indifference to Plaintiff's federal rights.

83. As a result of Defendants' violation of Plaintiff's rights under Title IX, he is entitled to some or all of the relief requested below in his Request for Relief.

### COUNT IV
### Retaliation in Violation of
### Section 1981 of the Civil Rights Act of 1866
*Against All Defendants*

84. Plaintiff incorporates the foregoing paragraphs by reference.

85. Section 1981 of the Civil Rights Act of 1866 prohibits employers and other persons from retaliating against a person who opposes race discrimination and harassment in employment. 42 U.S.C. §1981, The Civil Rights Act 1866, as amended by the Civil Rights Act of 1991.

86. As alleged herein, Plaintiff opposed race discrimination and harassment against a Korean professor in his employment at NSU.

87. As alleged herein, Defendants violated Plaintiff's rights under Section 1981 by retaliating against him because he opposed race discrimination and harassment in employment. In so doing, Defendants acted under color of state law and deprived Plaintiff of his federal rights under 42 U.S.C. § 1983.

88. As alleged herein, Defendants acted with malice or reckless indifference to Plaintiff's federal rights.

89. As a result of Defendants' violation of Plaintiff's rights under Section 1981, he is entitled to some or all of the relief requested below in his Request for Relief.

## COUNT V
## Retaliation in Violation of
## the First Amendment to the U.S. Constitution
*Against All Defendants*

90. Plaintiff incorporates the foregoing paragraphs by reference.

91. As a public employee, Plaintiff had a right to speak as a citizen on matters of public concern without fear of retaliation by his public employer as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution.

92. As alleged herein, between 2015 and 2018, Plaintiff spoke as a citizen on matters of public concern.

93. As alleged herein, Defendants retaliated against Plaintiff because his speech on matters of public concern.

94. In so doing, Defendants acted under color of state law and deprived Plaintiff of his federal rights under 42 U.S.C. § 1983.

95. As alleged herein, Defendants acted with malice or reckless indifference to Plaintiff's federal rights.

96. As a result of Defendants' violation of Plaintiff's rights under the U.S. Constitution and Section 1983, he is entitled to some or all of the relief requested below in his Request for Relief.

97. As a result of Defendants' violation of Plaintiff's rights under the U.S. Constitution and Section 1983, he is entitled to some or all of the relief requested below in his Request for Relief.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial under Rule 38(b) of the Federal Rules of Civil Procedure.

**REQUEST FOR RELIEF[2]**

WHEREFORE, Plaintiff requests an order and judgment from the Court against Defendants as follows:

A. Finding that Defendants' conduct, as complained of herein, violated Plaintiff's federal rights;

B. Finding that Defendants' unlawful conduct was willful or done with malice or reckless indifference to Plaintiff's federal rights;

C. Reinstating Plaintiff's employment at Northern State University and granting him tenure;

D. Awarding Plaintiff all relief necessary to make him whole as permitted or required under applicable law, including damages in an amount exceeding $75,000 for lost income and benefits, out-of-pocket expenses, emotional distress, mental anguish, humiliation, embarrassment, harm to reputation, lost earning capacity, and other harm;

E. Awarding liquidated damages as permitted or required under applicable law;

F. Awarding punitive damages as permitted or required under applicable law;

G. Awarding prejudgment interest as permitted or required under applicable law;

H. Awarding attorneys' fees, disbursements, and costs as permitted or required under applicable law; and

I. Awarding such additional relief to Plaintiff, or imposing such additional penalties on Defendants, as the Court deems just and equitable.

---

[2] With respect to Plaintiff's claims under Section 1983, Plaintiff seeks only equitable and injunctive relief against the institutional defendants, but he seeks all other available relief (including damages) against Defendant Dr. Kelly Duncan in her individual capacity.

Dated: November 12, 2019

s/ Stephanie E. Pochop
**JOHNSON POCHOP & BARTLING**
Stephanie E. Pochop (SD # 1379)
stephanie@rosebudlaw.com
405 Main Street
Gregory, SD 57533
Telephone: (605) 835-8391
Facsimile: (605) 835-8742

**NICHOLS KASTER, PLLP**
Jim H. Kaster* (MN #53946)
kaster@nka.com
Matthew A. Frank* (MN #395362)
mfrank@nka.com
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870

(*Motion for Admission *Pro Hac Vice* Forthcoming.)

ATTORNEYS FOR PLAINTIFF

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Thomas Orr

**(b)** County of Residence of First Listed Plaintiff: Brown
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Johnson Pochop & Bartling
Stephanie Pochop
405 Main Street Telephone: 605-835-8391 See Attachment.

## DEFENDANTS
Northern State University; S.D. Board of Regents; Dr. Timothy Downs (official capacity); and Dr. Kelly Duncan (official and individual capaciti

County of Residence of First Listed Defendant: Brown
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. 2601; Sec. 20 U.S.C. Sec. 1681; 42 U.S.C. Sec. 1981; 42 U.S.C. Sec. 1983.
Brief description of cause:
Sex discrimination, interference with FMLA rights, and retaliation for exercising federal rights.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 75,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 11/12/19
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____