

FILED
OCT 05 2020

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| DR. THOMAS ORR,<br><br>Plaintiff,<br><br>vs.<br><br>SOUTH DAKOTA BOARD OF REGENTS, DR. TIMOTHY DOWNS, NSU PRESIDENT, IN HIS OFFICIAL CAPACITY; DR. KELLY DUNCAN, FORMER NSU DEAN OF EDUCATION, IN HER INDIVIDUAL CAPACITY; AND MEMBERS OF THE SOUTH DAKOTA BOARD OF REGENTS, IN THEIR OFFICIAL CAPACITIES;<br><br>Defendants. | 1:19-CV-01023-CBK<br><br><br><br>MEMORANDUM OPINION AND ORDER |

This matter is before the Court on defendants' motion to dismiss Count III of plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, Doc. 25.

## BACKGROUND

Plaintiff Thomas Orr was an assistant professor in the School of Education at Northern State University ("NSU") from 2011 until his dismissal from the university in 2019. Doc. 23 at 1. When plaintiff joined the NSU faculty, he did so as a "tenure track" professor. Id. at 3. Though the complaint fails to state specific dates, it appears that plaintiff applied for tenure at some point in his final year at NSU, the 2018-2019 school year. Plaintiff's tenure application was subsequently denied and his employment with the University was terminated. Id. at 8.

Plaintiff's complaint states multiple claims for relief, including claims for interference with a covered employee's taking parental leave under the Family and

Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654, and a denial of full benefits under the same. Plaintiff also states in three separate claims that his tenure was denied, and his employment was terminated, in retaliation for his engaging in constitutionally protected activities that upset university decision makers.

Count III of plaintiff's complaint claims that, in denying him tenure and terminating his employment, the university retaliated against him in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*. Plaintiff's factual claims that apply to this count of the complaint concern his decision to take FMLA leave as a male employee.

Defendants' motion ignores the factual basis of Count III and, instead, focuses on a legal argument. It is defendants' assertion that Title IX does not grant an individual right of action for employees of covered institutions who were themselves the victim of sex discrimination. Doc. 26 at 2. Defendants argue that plaintiff's sole avenue for relief for this claim lies under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.

## LEGAL STANDARD

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, the court may consider the complaint, some materials that are part of the public record, or materials embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999). To survive the motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. The factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir.2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

2

That said, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When evaluating a motion to dismiss under Rule 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. All legal conclusions must be supported by plausible factual allegations to survive a motion to dismiss under Rule 12(b)(6). Id.

## DISCUSSION

"Title IX proscribes gender discrimination in education programs or activities receiving federal financial assistance." N. Haven Bd. of Ed. v. Bell, 456 U.S. 512, 514 (1982). Its prohibition of gender discrimination states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ." 20 U.S.C. § 1681(a). The statute goes on to list a number of exceptions to the rule that have no bearing on the present case.[1]

While there is no direct precedent answering the narrow question of whether an employee of a covered institution who is a direct victim of sex discrimination may bring an individual claim for relief under Title IX, the Supreme Court has addressed several related questions that necessarily inform the Court's analysis. First, in Cannon v. University of Chicago, 441 U.S. 677 (1979), the Court "held that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). "In *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60 (1992), [the Court] held that it authorizes private parties to seek monetary damages for intentional violations of Title IX." Id. Then, in North Haven Board of Education v. Bell, the Court held that employees of covered institutions are "persons" for the purposes of Title IX's prohibition of intentional sexual discrimination. Bell, 456 U.S. at 535-36.

---

[1] Defendants do not argue that NSU is not a covered institution or that any of the other exceptions to Title IX apply. Their argument is limited to the question of whether Thomas Orr, as an employee of a covered institution, is an appropriate plaintiff under Title IX.

3

Bell concerned "the validity of regulations promulgated by the Department of Education pursuant to Title IX." Id. at 514. Two covered institutions challenged the Department's power under the Act to promulgate rules governing "employment practices of educational institutions." Id. at 517. While the Court upheld the regulations at issue in Bell because it considered employees to be within the scope of Title IX's proscription of sex discrimination, the case did not involve an individual right of action, and concerned only the rulemaking authority of a Federal agency. Id. at 535-36. When read together, however, Cannon and Bell seem to suggest that employees have just as much right as any other "person" to file a private right of action under Title IX. As stated by the Bell Court:

> Section 901(a)'s broad directive that "no person" may be discriminated against on the basis of gender appears, on its face, to include employees as well as students. Under that provision, employees, like other "persons," may not be "excluded from participation in," "denied the benefits of," or "subjected to discrimination under" education programs receiving federal financial support.

Bell, 456 U.S. at 520. The Supreme Court thought that because Title IX "neither expressly nor impliedly excludes employees from its reach" the term "persons" should be construed to include them because it is the natural implication of the word. Id. at 521. Indeed, employees are people, and a broader more encompassing word could not have been chosen. Id. The Court also stated that "the absence of a specific exclusion for employment among the list of exceptions tends to support the [lower court's] conclusion that Title IX's broad protection of 'person[s]' does extend to employees of educational institutions." Id. at 521-22.

The Bell Court's interpretation of the term "person" also supports the conclusion that no two types of "person" should be treated differently under the statute. The statute does not distinguish between categories of "person," which was a significant factor in the Court's determination that employees were included within its scope via the same term that included students. It would turn that analysis on its head to argue that the term "person" is meant to include both students and employees but, as to employees, the potential remedies for a violation are limited. Neither the statute itself, nor any of the Supreme Court cases interpreting it, has made such a distinction. This is likely because

4

there is no indication in the text of the statute that Congress intended to make such a distinction. Employees, like students, are included in Title IX's protection via the same mechanism and terminology, thus, in the absence of a statutory distinction it would make little sense for a court to imply one.

Defendants would argue that the distinction exists because sex discrimination in employment has previously been addressed by Congress in Title VII of the Civil Rights Act of 1964. Essentially, defendants assert that because interpreting Title IX to provide a private right of action for employees of covered educational institutions would allow said employees an avenue for relief for sex discrimination in addition to the one contained in Title VII, Congress could not have so intended. But nothing in either statute supports such an interpretation.

Indeed, while nothing in the Text of Title IX, Title VII, or related Supreme Court precedent supports the argument that Congress intended Title VII to be the exclusive remedy for an employee in plaintiff's position, there is precedent that suggests the opposite. In Brown v. General Services Administration, the Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in Federal employment." 425 U.S. 820, 835 (1976). The Court relied heavily on the fact that the 1964 Act did not apply to Federal employees until it was amended in 1972 by the Equal Employment Opportunity Act. Id. at 825. The Court then determined that before the amendment of Title VII in 1972, Congress believed that an aggrieved Federal employee would have no effective judicial remedy for claims of employment discrimination and, thus, created Title VII to be "an exclusive, pre-emptive administrative and judicial scheme for the redress of" discrimination claims for Federal employees. Id. at 828-29. In so holding, the Court distinguished an earlier case, Johnson v. Railway Express Agency, 421 U.S. 454 (1975):

> In *Johnson* the Court held that in the context of *private employment* Title VII did not pre-empt other remedies. But that decision is inapposite here. In the first place, there were no problems of sovereign immunity in the context of the *Johnson* case. Second, the holding in *Johnson* rested upon the explicit legislative history of the 1964 Act which " 'manifests a

5

> congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' " 421 U.S., at 459, 95 S.Ct., at 1719, 44 L.Ed.2d, at 301, quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019-20, 39 L.Ed.2d 147, 158 (1974).

Brown, 425 U.S. at 833. Thus, the Court clarified its opinion that Title VII itself manifests a congressional intent that it should not be an exclusive remedy. It was only the Court's determination that Congress believed there to be no judicial remedy for employment discrimination claims brought by Federal employees prior to 1972 that lead it to conclude Title VII was meant to be an exclusive remedial scheme for such plaintiffs. Thus, Brown reaffirms Johnson's holding that Title VII is not the exclusive remedy for private sector employees claiming employment discrimination.

There is another important Supreme Court case addressing this issue. Jackson v. Birmingham Board of Education was a case brought by a former girls' high school basketball coach who alleged that the school took adverse employment action against him in retaliation for speaking out concerning sex discrimination in the school's sports program. 544 U.S. 167, 171 (2005). In short, Jackson discovered that the girls' team was not receiving equal funding nor equal access to athletic equipment and facilities. Id. After Jackson complained about said unequal treatment, he began to receive negative employment evaluations and was removed as the girls' basketball coach. Id. at 172. The Supreme Court held that Title IX "does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." Id. at 179. Thus, Jackson allowed suit under Title IX by an individual employee, who was retaliated against but was not himself the subject of sex discrimination, for money damages.

After Jackson, to hold that Title IX does not allow suit by an employee who *was* the victim of both the retaliation and the discrimination that is "the subject of the original complaint" would undermine Supreme Court precedent. Id. Indeed, Justice Thomas's dissenting opinion in Jackson complains that the Majority extended a private right of action under Title IX to indirect victims of sex discrimination, which was contrary to the

6

terms of the statute. Id. at 194 (Thomas, J., Dissenting). The dissenters argued that the language of Title IX required that the alleged discrimination have been based on "the plaintiff's sex, not the sex of some other person." Id. at 185. The dissenters made no mention of the fact that the Majority was allowing suit by an employee as opposed to a student.

For their argument that Title IX does not create a private right of action for employees of covered institutions alleging sex discrimination, defendants rely primarily on Lakoski v. James, 66 F.3d 751 (5th Cir. 1995), and a number of district court cases that themselves rely heavily on Lakoski. See Doc. 26 at 3-4. Dr. Lakoski was a tenure-track assistant professor at the University of Texas Medical Branch who alleged that she was denied tenure because of her sex. Lakoski, 66 F.3d at 752. The Lakoski Court held that Title VII was the exclusive remedy for claims of sex discrimination by an employee of an educational institution receiving federal funds. Id. at 758. The Fifth Circuit's holding rested on its assertion that to interpret Title IX as encompassing a private right of action for said employees would "disrupt [Title VII's] carefully balanced remedial scheme for redressing employment discrimination by employers." Id. at 754.

Defendants' reliance on Lakoski is misplaced. The 1995 case was decided ten years before Jackson, it did not discuss Johnson or Brown, and it limited the holding of Bell based on its own policy judgment. Jackson explicitly allowed an employee to sue under Title IX in his individual capacity for money damages. Johnson and Brown held and reaffirmed, respectively, that Title VII was not meant to be an exclusive remedy for claims of employment discrimination against private employers. Finally, as discussed above, the Court's analysis in Bell does not warrant limiting its holding to the realm of administrative law.

On a last note, defendants' emphasis on the holdings of courts in other circuits ignores the holdings of the First, Third, and Fourth Circuits that a private right of action for private sector employees exists under Title IX. See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881 (1st Cir. 1988); Doe v. Mercy Catholic Medical Center, 850 F.3d 545, 563

7

(3rd Cir. 2017); and Preston v. Virginia ex rel. New River Cmty. Coll., 31 F.3d 203, 206 (4th Cir. 1994).

In short, binding and persuasive precedent convince this Court that Title IX contains a private right of action for employees of covered institutions who claim they have been the victim of discrimination on the basis of sex.

IT IS HEREBY ORDERED that defendants' motion to dismiss for failure to state a claim upon which relief can be granted, Doc. 25, is DENIED.

Dated this 5th day of October, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge